1494

Deborah SMITH, Appellant v. SAFECO LIFE INSURANCE CO., Respondent.

(399 S.E. (2d) 427)

Court of Appeals

*J. William Ray,* Greenville, *for appellant.*

*O. Doyle Martin* and *Tara H. Snyder* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent.*

Heard March 19, 1990.

Decided April 30, 1990.

Reheard Sept. 18, 1990.

Order Sept. 18, 1990.

GARDNER, Judge:

Deborah Smith (Smith) brought this action against Safeco Life Insurance Co. (Safeco) on a group accidental death insurance policy issued on March 9, 1985, to Smith and covering her life, the life of her husband, J.R. Smith (J.R.), and a child. Smith alleged that J.R. suffered accidental death on July 23, 1986. The case was tried before a jury which returned a verdict for Smith. The trial judge granted Safeco's post-verdict motion for judgment n.o.v. We reverse and remand.

## ISSUE

The sole issue of merit is whether the trial judge erred in granting the motion for judgment n.o.v.

## FACTS

The policy provides in pertinent part:

In the event of accidental death SAFECO will pay the Benefit shown on the attached form. Accidental death is death caused by accidental bodily injuries independent of sickness and any other cause. . . .

*     *     *     *     *     *

## EXCLUSIONS

This policy does not cover loss caused by or resulting directly or indirectly from any one or more of the following:

*     *     *     *     *     *

(b) Disease, bodily or mental infirmity, or medical or surgical treatment; . . . .

*     *     *     *     *     *

## GENERAL PROVISIONS

Conformity with State Law: Any part of the policy in conflict with the law of the State in which it was issued is hereby amended to conform with the minimum requirements of that law.

Smith's husband, J.R. Smith, died after running an eighteen horsepower gasoline powered concrete cutter in a small, windowless, poorly ventilated room. He had been running the cutter intermittently for about three hours. After returning from a lunch break, he began having trouble breathing and then collapsed. Emergency medical services were called. The paramedic testified that J.R. was pulseless and showed no signs of respiratory effort when he arrived at the scene. Vigorous resuscitation efforts were made to revive J.R. including administration of 100 percent oxygen by intubation directly into his lung. Oxygen was administered for at least 26 minutes and possibly longer.

J.R., along with his son Chad Smith and a friend of the son had been working together. Chad testified that he and his friend both suffered from dizziness, nausea and headaches during the morning which they subsequently attributed to the carbon monoxide level in the room. They, however, along with J.R. continued working taking periodic breaks.

Smith testified that they had been married twenty years

and that J.R. was 46. She testified that there were no medical questions on the application for the accident policy and no questions about his health history. She also testified that J.R.'s health was good and that she had never observed his having any physical difficulties. She testified that "he mowed the grass and things like that" without any problems.

Dr. Sandra Conradi, chief medical examiner for Charleston County, testified that she had done an autopsy on J.R.'s body and found a carboxyhemoglobin level of 20.1 percent and that this level of carbon monoxide was at the lower level of lethality. She also testified that J.R. suffered from arteriosclerosis of his coronary arteries and that the arteriosclerosis was of an advanced state. She testified further that "Mr. Smith had evidence of [an] old heart attack in the past, with scarring of his heart in varying areas."

Dr. Conradi's autopsy report was introduced of record and from it the following was read to the jury:

> After review of the autopsy and historical findings as noted in this protocol, it is the opinion of the prosecutor that the decedent, J.R. Smith, died as a result of acute carbon monoxide poisoning precipitating a cardiac arrhythmia. Severe atherosclerotic heart disease was present. *It is our further opinion that the manner of death best be designated accidental.* [Emphasis ours.]

Safeco by way of response to request for admissions qualifiedly admitted that the carbon monoxide level of an exposed person would be reduced by mouth to mouth resuscitation and the administering of oxygen.

Dr. Roger Butts, Safeco's employee and witness, testified on cross-examination that the half-life of carbon monoxide in the presence of 100 percent oxygen is 80 minutes. He admitted that the administration of 100 percent oxygen for more than 26 minutes would reduce the carbon monoxide level.

The trial judge of this case, in considering the post-verdict motion for judgment n.o.v., was required to view the evidence and the inferences that reasonably could be drawn therefrom in the light most favorable to Smith and to deny the motion when either the evidence yields more than one inference or its inferences are in doubt. This rule is especially strong in South Carolina where the "scintilla of evidence

rule" is applicable. *Sweatt v. Norman*, 283 S.C. 443, 322 S.E. (2d) 478 (Ct. App. 1984).

## DISCUSSION

We hold that the trial judge erred in granting Safeco's motion for a judgment n.o.v. for two reasons. First, the evidence is capable of the inference that (1) J.R. had ingested more carbon monoxide than was contained in his body because some of it had been dissipated by the administration of 100 percent oxygen and by the fresh air he had breathed while on break before collapsing, and (2) even after death the carbon monoxide level was at the lower level of lethality. These two facts of record constitute, we hold, more than a scintilla of evidence upon which the jury might have based its verdict.

## CONCLUSION

Our scope of review requires us to examine the record to determine whether the trial judge viewed the motion for judgment n.o.v. in a light most favorable to J.R. In so doing, we find that the record before us considered in a light most favorable to Smith reveals an inference that J.R. suffered a lethal dose of carbon monoxide which killed him.

For the above reasons, we reverse the order of the trial judge granting judgment n.o.v. and remand for purposes of entering judgment in accord with this decision.

Reversed and remanded.

BELL and CURETON, JJ., concur.

## ORDER ON REHEARING

GARDNER, Judge:

This court granted Safeco's petition for a rehearing with oral arguments on the issues of whether there is any evidence of record that the carbon monoxide alone caused Smith's death and whether South Carolina Insurance Regulation 69-34 is applicable.

Safeco vigorously argues that the oxygen administered to Smith by the rescue squad and at the hospital was not absorbed by his body and therefore could not have affected the

amount of carbon monoxide found in his blood upon autopsy. Conceding, arguendo, this contention, we nevertheless adhere to the opinion as published on the basis that the record contains evidence to support the jury's finding that Mr. Smith "died as the result of accute carbon monoxide poisoning . . ." as reflected in that part of Dr. Conradi's autopsy report quoted in the published decision and other evidence therein referred to.

We concede that there is conflicting testimony of record. In weighing conflicting testimony, however, a jury may believe that part of the testimony which convinces it more heavily toward one view of the facts as opposed to another view. The jury is also free to accept a portion of a witness's testimony and reject a portion. All of this is basic law generally included in every jury charge and is the law upon which this court must base its decisions.

Moreover, in considering a post-verdict motion for judgment n.o.v., the trial judge and this court are required to view the evidence and the inferences reasonably drawn therefrom in the light most favorable to the party opposing the motion. The motion for judgment n.o.v. must be denied when either the evidence yields more than one reasonable inference or its inferences are in doubt.[1] Accordingly, we adhere to the published decision reversing the order of the trial judge by which judgment n.o.v. was granted Safeco.

CURETON, J., dissents in separate opinion.

CURETON, Judge, dissenting:

After reconsidering our original decision, I would now affirm the decision of the trial judge. A review of the entire record in this case leads me to conclude that the only reasonable inference deducible from the evidence is that Smith's heart disease contributed to his death. Thus, his death was not within the policy coverage.

---

[1] *See Haskins v. Fairfield Elec. Coop.*, 283 S.C. 229, 321 S.E. (2d) 185 (Ct. App. 1984).