732 S.E.2d 166

RFT Management Co., L.L.C., Appellant,

v.

TINSLEY & ADAMS L.L.P. and Welborn
D. Adams, Individually, Respondents.

No. 27157.

Supreme Court of South Carolina.

Heard May 23, 2012.
Decided Aug. 15, 2012.
Rehearing Denied Sept. 19, 2012.

324

Harry A. Swagart, III, of Columbia, for Appellant.

Matthew Holmes Henrikson, of Clarkson Walsh Terrell & Coulter, of Greenville, for Respondents.

Justice BEATTY.

Appellant RFT Management Co., L.L.C. (RFT) brought this action against respondents Tinsley & Adams, L.L.P. and attorney Welborn D. Adams (collectively, Law Firm) based on their legal representation of RFT during the closing of its purchase of two real estate investment properties in Greenwood County. RFT alleged claims for (1) professional negligence (legal malpractice), (2) breach of fiduciary duty, (3) violation of the South Carolina Unfair Trade Practices Act[1] (UTPA), and (4) aiding and abetting a securities violation in contravention of the South Carolina Uniform Securities Act of 2005 (SCUSA).[2] The trial court granted a directed verdict in favor of Law Firm on RFT's causes of action regarding the UTPA and SCUSA, and it merged RFT's breach of fiduciary claim with its legal malpractice claim. The jury returned a verdict in favor of Law Firm on RFT's remaining claim for legal malpractice. RFT appealed, and this Court certified the case from the Court of Appeals for its review pursuant to Rule 204(b), SCACR. We affirm.

## I. FACTS

RFT is a limited liability company, with David Roatch (Roatch) as its managing member. This action arises out of RFT's purchase of two parcels of property in a residential community near Lake Greenwood known as Planters Row at Palmetto Crossing.

Planters Row was developed by Lake Greenwood Developers, L.L.C. (Developer), which was managed by William Gilbert (Gilbert). The subdivision had 65 lots, and in order to generate sales activity, Developer initially offered "discounts" of from five to ten percent of the purchase price to some buyers, as well as buy-back options in which it agreed to repurchase the lots. The repurchase option was to be exer-

---

1. S.C.Code Ann. §§ 39–5–10 to –560 (1985 & Supp.2011).

2. S.C.Code Ann. §§ 35–1–101 to –703 (1987 & Supp.2011).

cised within a specified timeframe at a set price that exceeded the purchase price.

On September 25, 2007, RFT entered into agreements to purchase lots 28 and 31 in Planters Row from Developer, for a total purchase price of $570,000 ($290,000 for lot 28 and $280,000 for lot 31). At the time of the sales agreements with RFT, Developer did not own lots 28 and 31. Developer had previously sold lot 28 to Christopher and Susan Grimshaw and had sold lot 31 to Douglas Robertson.

In conjunction with these sales to the Grimshaws and Robertson, Developer had executed contemporaneous agreements to buy back the lots within a specified time period, and the Grimshaws and Robertson had notified Developer that they wished to exercise their options to sell their properties back to Developer. Developer, however, advised the buyers shortly before the scheduled closings that it did not have the funds to repurchase the properties, and it negotiated an extension of time.

Meanwhile, on October 30, 2007, RFT and Developer signed a buy-back agreement regarding lots 28 and 31 in conjunction with RFT's purchase of the two lots. RFT had retained Joe Maddox, a Spartanburg attorney, to review the agreements concerning the purchase of the lots and the buy-back. Maddox negotiated directly with Gilbert and, at the suggestion of Maddox, RFT additionally obtained a second mortgage on the 21 unsold lots in the subdivision in order to secure payment in the event RFT exercised its rights under the buy-back agreement.

Law Firm handled the majority of the real estate closings for Developer, and the closings were usually the responsibility of attorney Welborn D. Adams (Adams). Adams was the closing attorney for the transaction with RFT. Adams coordinated the scheduling of the closings in order to accomplish the repurchases of the two lots from the prior owners and the sale to RFT. RFT's contract for legal services with Law Firm stated Law Firm was being retained solely to perform the ministerial acts associated with the closing:

> The undersigned acknowledge that they have not retained the law firm to negotiate the terms of their contract nor are they relying on the law firm to provide substantive advice

about how or whether to proceed with this transaction. Rather, the undersigned acknowledge that the law firm has been retained to close the transaction, prepare a deed of conveyance and perform the ministerial act[s] associated with real estate closings.

The closing with RFT took place on October 30, 2007.[3] Thereafter, Developer allegedly did not have sufficient capital to complete the amenities in the community.

RFT filed a complaint against Law Firm on October 20, 2008, in which RFT asserted claims for legal malpractice, breach of fiduciary duty, and violations of the UTPA and SCUSA. At trial, RFT's claims centered on its allegations that it was unaware of the status of the lots, that Law Firm engaged in deceptive acts regarding the true owners of the property, and that it suffered damages because its investment properties had a markedly lower value than anticipated.[4] Specifically, RFT alleged it was unaware Developer did not own the two lots when it contracted to sell them to RFT. Further, RFT claimed it did not know that the lot owners, the Grimshaws and Robinson, exercised their rights under buy-back agreements, and that Developer was financially unable to perform. RFT maintained Law Firm assisted Developer in selling the two lots to RFT as a "flip transaction," in which the money Developer received from RFT from the sale of the lots would be used to simultaneously close the repurchase from the

---

3. At the closing, Adams provided Roatch a letter dated October 30, 2007 advising that he had examined the real estate records of Greenwood County for a period of 40 years with reference to lots 28 and 31 and that he was "of the opinion that RFT ... will acquire a good and marketable title in fee simple," subject to (1) proper execution of a deed from Douglas W. Robertson vesting fee simple title in lot 31 to Developer, (2) proper execution of a deed from Christopher W. and Susan M. Grimshaw vesting title in lot 28 to Developer, (3) proper execution of a deed from Developer vesting title to the property to RFT, and (4) the payment of county taxes due on lots 28 and 31. According to Roatch, he did not read this letter at the closing as he was given only the documents that required his signature at that time.

4. RFT obtained appraisals of the lots in May 2010, in which it was indicated that lot 28 then had an estimated value of $55,500 and lot 31 had an estimated value of $54,000. Roatch testified that at the time of trial, he was of the opinion the lots were only worth around $25,000 each, as lots of comparable size in the development had sold for that amount at foreclosure.

Grimshaws and Robinson and enable Developer to deed the two lots to RFT.[5] RFT asserts none of these facts regarding the simultaneous closing, the "flip transaction," or the uses of RFT's funds were disclosed to RFT.

At the close of all the evidence, the trial court "merged" RFT's breach of fiduciary duty claim into its claim for legal malpractice and granted Law Firm's motions for a directed verdict on RFT's UTPA and SCUSA claims. Thus, only the claim of legal malpractice went to the jury, which returned a verdict in favor of Law Firm. The trial court denied RFT's post-trial motions.

On appeal, RFT contends the trial court erred in (1) failing to grant its motion for judgment notwithstanding the verdict (JNOV) or a new trial on the issue whether Law Firm engaged in malpractice by representing both RFT and the seller at the closing since there was an unwaivable conflict of interest; (2) failing to grant its motion for JNOV or a new trial on the issue whether Law Firm engaged in malpractice by failing to disclose materials facts, submitting false and misleading documents, and/or arranging the closing as an unlawful "flip transaction"; (3) failing to charge the jury on breach of fiduciary duty and merging this cause of action with its first cause of action for legal malpractice; (4) directing a verdict in favor of Law Firm on RFT's UTPA claim; and (5) directing a verdict in favor of Law Firm on RFT's claim for aiding and abetting a SCUSA violation.

## II. LAW/ANALYSIS

### A. Legal Malpractice Claim

RFT first contends the trial court erred in denying its motion for a JNOV on its claim of legal malpractice because Law Firm committed malpractice as a matter of law. Alternatively, RFT argues the trial court erred in denying its request for a new trial on this claim.

---

**5.** *See In re Barbare*, 360 S.C. 560, 602 S.E.2d 382 (2004) (describing flip transactions and finding the closing attorney acted improperly in furnishing inaccurate information on the HUD–1 Settlement Statements, which misled lenders regarding the underlying financial transaction, and that the buyer, seller, and others must have accurate records).

RFT asserts Law Firm committed legal malpractice, as a matter of law, in two ways. First, by representing both RFT and Developer at the closing, Law Firm committed legal malpractice because there was an unwaivable conflict of interest. Second, Law Firm committed legal malpractice by failing to disclose material information to RFT, providing false and misleading documents to RFT, and closing a deceptive "flip transaction."

A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach. *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009); *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 435 n. 2, 472 S.E.2d 612, 613 n. 2 (1996).

A party making a motion for a directed verdict must state the specific grounds relied upon therefor, and the trial court may grant the motion when the case presents only issues of law. Rule 50(a), SCRCP. If the motion is denied, the party may thereafter move for a JNOV in order to have the verdict and judgment set aside and a judgment entered in accordance with the party's directed verdict motion. Rule 50(b), SCRCP. A motion for a new trial may be joined with the JNOV motion or prayed for in the alternative. *Id.*

"When a party fails to renew a motion for a directed verdict at the close of all evidence, he waives his right to move for JNOV." *Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 496 (Ct.App.2006). Moreover, only the grounds raised in the directed verdict motion may properly be reasserted in a JNOV motion. *In re McCracken*, 346 S.C. 87, 551 S.E.2d 235 (2001); *Gov't Emps. Ins. Co. v. Mackey*, 260 S.C. 306, 195 S.E.2d 830 (1973). A motion for a JNOV is merely a renewal of the directed verdict motion. *Wright*, 372 S.C. at 20, 640 S.E.2d at 496.

When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this Court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the non-

moving party. *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 602 S.E.2d 772 (2004).

The trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt. *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 445 S.E.2d 439 (1994). Moreover, "[a] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998). An appellate court will reverse the trial court's ruling only if no evidence supports the ruling below. *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000). In deciding such motions, neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence. *Id.* at 300, 536 S.E.2d at 419.

We find RFT's argument that it is entitled to a judgment as a matter of law on its claim for legal malpractice to be without merit. As noted above, a motion for JNOV must be based on the same grounds as those raised in a motion for a directed verdict motion made at the close of all the evidence.

In reviewing the record, as an initial matter we agree with Law Firm that RFT did not move for a directed verdict on the legal malpractice claim based on the second ground it now urges on appeal, i.e., that this was an improper flip transaction and Law Firm gave misleading information while failing to make required disclosures. Thus, this argument is not properly before the Court. *See Roland v. Palmetto Hills*, 308 S.C. 283, 286 & 287 n. 2, 417 S.E.2d 626, 628 & n. 2 (Ct.App.1992) (stating "[a] motion for judgment notwithstanding the verdict is a renewal of the directed verdict motion and cannot raise grounds beyond those raised in the directed verdict" motion, and additionally noting that the burden was on the appellant to furnish a sufficient record on appeal to allow review).

As to RFT's first ground concerning whether there was an unwaivable conflict as a matter of law, RFT and Law Firm initially agreed this issue concerned a question of law, but then later during the parties' discussion Law Firm stated

it had found authority now indicating that the matter presented a question of fact, and RFT did not contest this authority. In its order denying RFT's post-trial motion for a JNOV, the trial court specifically found that the parties had agreed at trial that the legal malpractice claim involved questions of fact that required submission of the claim to a jury. There is nothing in the excerpt of this discussion in the record that is inconsistent with the trial court's finding. Thus, RFT may not now complain that it was entitled to a judgment as a matter of law. *See generally Shearer v. DeShon*, 240 S.C. 472, 484, 126 S.E.2d 514, 520 (1962) ("Ordinarily, one cannot complain of an error which his own conduct has induced."). Moreover, the existence of an unwaivable conflict would not establish all of the remaining elements of the legal malpractice claim as a matter of law.

To the extent RFT further argues on appeal that the trial court erred in denying its post-trial motion for a new trial on its legal malpractice claim, RFT has shown no error. RFT reasserts the same grounds in its new trial request as for the JNOV and also asserts the trial court should have granted a new trial pursuant to the thirteenth juror doctrine.[6]

The trial court denied RFT's request for a new trial on the legal malpractice action without specifying its grounds. *See Miller v. Atl. Coast Line R.R. Co.*, 95 S.C. 471, 79 S.E. 645 (1913) (stating where an order denying a new trial motion does not specify the grounds for the decision, it will be affirmed on appeal if the record presents any grounds upon which the motion could have been properly refused).

██ In denying the JNOV on this claim, however, the trial court noted, inter alia, that the parties had agreed there were questions of fact regarding the legal malpractice claim and that the jury had properly considered the issue and reached a unanimous verdict. Since the trial court found there were questions of fact as to this claim and that RFT had not challenged this point, RFT has shown no error in the trial court's failure to grant its new trial motion based on the grounds asserted in its request for a JNOV and its allegation that the evidence does not support the verdict. *See McEntire*

---

6. RFT does not argue the other grounds it raised in its post-trial motion for a new trial. Therefore, they are not before this Court.

*v. Mooregard Exterminating Servs., Inc.*, 353 S.C. 629, 632, 578 S.E.2d 746, 747 (Ct.App.2003) (stating a directed verdict motion is a prerequisite to a motion for JNOV or a new trial motion on the ground the evidence does not support the verdict).

As for RFT's new trial motion made pursuant to the thirteenth juror doctrine, the thirteenth juror doctrine is a vehicle by which the trial court may take its own view of the evidence and grant a new trial if it disagrees with the jury's verdict. *Folkens v. Hunt*, 300 S.C. 251, 387 S.E.2d 265 (1990). This is also called granting a new trial upon the facts, and the judge is not required to give the reasons for its ruling. *Id.* at 254, 387 S.E.2d at 267. The effect is the same as if the jury had failed to reach a verdict. *Id.* A trial court's order granting or denying a new trial upon the facts will not be disturbed unless the decision is wholly unsupported by the evidence or the conclusion reached is controlled by an error of law. *Id.* at 254–55, 387 S.E.2d at 267.

"The granting of a new trial upon the facts is not the equivalent of granting a directed verdict." *McEntire*, 353 S.C. at 632, 578 S.E.2d at 748. The question of whether the evidence is legally sufficient to sustain a verdict, a question of law, is distinguishable from the question of whether a fair preponderance of the evidence supports a verdict, which is a matter involving the exercise of discretion. *Id.* at 632–33, 578 S.E.2d at 748. Stated another way, a party's evidence might make a case one for the jury, but the evidence might be so outweighed by the countervailing evidence that, in the exercise of its discretion, a trial court could choose to set aside the verdict under the thirteenth juror doctrine. *Id.* at 633, 578 S.E.2d at 748 (citing *Russell v. Pilger*, 113 Vt. 537, 37 A.2d 403, 414 (1944)).

We hold RFT has shown no abuse of discretion. The scope of representation offered by Law Firm was strictly limited in the retainer agreement Law Firm had with RFT, and RFT's own real estate agent had knowledge of the October 30th title letter outlining the status of the properties. Thus, a jury could have properly found there was no deceitful action by Law Firm.

One of the most significant areas of conflict was the competing experts offered by RFT and Law Firm as to whether Law Firm had met the requisite standard of care in the legal malpractice claim. Although RFT introduced the testimony of its expert in support of its claim that Law Firm had breached the requisite standard of care in handling the closing, Law Firm countered with its own expert, an attorney who had practiced as both a closing attorney and a trial attorney litigating real estate matters for over thirty years. Law Firm's expert testified that, in his experience, most residential property closings were handled by only one lawyer. The expert also examined the retainer agreement that was executed by the parties in this case and stated it was his professional opinion that the standard of care for a real estate attorney had been met and that the document signed by RFT limited the scope of Law Firm's representation and its obligation to RFT (to deliver marketable title). Consequently, we hold RFT has failed to establish the trial court abused its discretion in denying its new trial motion.

## B. Remaining Claims

Having upheld the jury's determination that RFT failed to establish its claim of legal malpractice, we find RFT's remaining claims are precluded as a matter of law under the circumstances present here.

### (1) Breach of Fiduciary Duty

RFT contends the trial court erred in "merging" its second cause of action for breach of fiduciary duty with its first cause of action for legal malpractice. RFT asserts the trial court erroneously determined the breach of fiduciary claim was redundant.

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Davis v. Greenwood Sch. Dist. 50,* 365 S.C. 629, 635, 620 S.E.2d 65, 68 (2005). To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to

the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant. *See generally Moore v. Moore,* 360 S.C. 241, 599 S.E.2d 467 (Ct.App.2004) (discussing the elements comprising a breach of fiduciary duty claim). "Our courts have long recognized that an attorney-client relationship is, by its very nature, a fiduciary relationship." *Spence v. Wingate,* 395 S.C. 148, 158, 716 S.E.2d 920, 926 (2011).

A claim for breach of fiduciary duty, as a general matter, is distinguishable from a claim for legal malpractice because it can arise in contexts other than one involving an attorney-client relationship. *See, e.g., In re Estate of Cumbee,* 333 S.C. 664, 511 S.E.2d 390 (Ct.App.1999) (finding a fiduciary relationship existed where a son held his mother's power of attorney and managed all of her finances). In the current matter, however, RFT's claim for breach of fiduciary duty arose out of the duty inherent in the attorney-client relationship and it arose out of the same factual allegations. Thus, RFT's claim for legal malpractice necessarily encompassed a breach of the fiduciary duty an attorney has to his or her client. RFT specifically acknowledged at trial that it could not provide any circumstances differentiating the two claims.

Although RFT now argues a breach of fiduciary claim *could* be distinguishable from legal malpractice, RFT does not set forth any specific facts that demonstrate its breach of fiduciary duty claim *is* distinguishable because it arises out of a duty *other than* one created by the attorney-client relationship or because it is based on different material facts.[7] Conse-

---

7. RFT argues for the first time on appeal that one difference between its two claims was that malpractice normally requires expert testimony on the attorney's standard of care and breach, while the breach of fiduciary duty claim requires no expert testimony, so the jury could have not believed RFT's experts and still found for it on a breach of fiduciary duty claim. It additionally argues evidence of a violation of the Rules of Professional Conduct, such as was allegedly present here, could support a verdict for legal malpractice, but not necessarily constitute evidence of a breach of fiduciary duty. These arguments were not made at the time of the trial court's ruling and are not properly reviewable here. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

quently, we hold the breach of fiduciary duty claim is duplicative. Moreover, it is clear RFT could not have prevailed on its breach of fiduciary duty claim since the jury rejected RFT's factual allegations when it returned a verdict in favor of Law Firm on the allegation of legal malpractice. Accordingly, we find no error in the trial court's ruling in this regard. *See Aller v. Law Office of Carole C. Schriefer,* 140 P.3d 23 (Colo.App.2005) (stating when a legal malpractice claim and a breach of fiduciary duty claim arise from the same material facts, the breach of fiduciary duty claim should be dismissed as duplicative); *Oehlerich v. Llewellyn,* 285 Ga.App. 738, 647 S.E.2d 399 (2007) (holding the plaintiff's claim for legal malpractice was based on the fiduciary attorney-client relationship and the breach of fiduciary duty claim was, therefore, duplicative since it was based on allegations that the attorney failed to fully investigate the claims and failed to properly advise the plaintiff, all of which called into question the degree of professional skill exercised by the attorney); *cf. Se. Hous. Found. v. Smith,* 380 S.C. 621, 647 n. 18, 670 S.E.2d 680, 694 n. 18 (Ct.App.2008) (noting that the dismissal of a party's legal malpractice claim would extinguish the breach of fiduciary duty cause of action in one action, but whether the defendant breached a fiduciary duty *in other capacities* could be a jury question).

## (2) UTPA

RFT next argues the trial court erred in granting a directed verdict to Law Firm on its UTPA claim on the basis the UTPA does not apply to the legal profession.

The UTPA declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C.Code Ann. § 39–5–20(a) (1985). "To recover in an action under the UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft,* 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct.App.2006).

The UTPA exempts certain practices and transactions from coverage; the burden of proving an exemption is upon the party claiming the exemption. S.C.Code Ann. § 39-5-40 (1985 & Supp.2011). The trial court found the exemption for matters subject to regulatory authority was applicable here. This exemption provides the UTPA does not apply to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law." S.C.Code Ann. § 39-5-40(a) (1985).

This Court has "interpreted this exemption to exclude from the UTPA those actions or transactions which are allowed or authorized by a regulatory agency or other statutes." *Taylor v. Medenica*, 324 S.C. 200, 218, 479 S.E.2d 35, 44 (1996) (citing *Ward v. Dick Dyer & Assocs.*, 304 S.C. 152, 403 S.E.2d 310 (1991)). In *Ward*, the Court observed the purpose of the exemption is to avoid subjecting a business to a lawsuit for doing something required by law or allowed by a statute or a regulation; it is intended to avoid a conflict between laws, not to exclude coverage for every act that is authorized or regulated by another statute or agency, as virtually every activity is regulated to some degree. *Ward*, 304 S.C. at 156, 403 S.E.2d at 312 (citing *Skinner v. Steele*, 730 S.W.2d 335, 337 (Tenn.Ct. App.1987)).

■ We find the trial court erred in relying upon the regulated industries exception. *See* S.C.Code Ann. § 39-5-10(b) (1985) (defining "trade" and "commerce" in the UTPA as including the "sale or distribution of any services"); *Taylor*, 324 S.C. at 217, 479 S.E.2d at 44 (citing the statutory definitions in section 39-5-10(b) and holding "[t]he provision of *any* service constitutes commerce within the meaning of the UTPA"; the Court observed that "[t]he statute does not exclude professional services from its definition"); *Camp v. Springs Mortgage Corp.*, 307 S.C. 283, 285, 414 S.E.2d 784, 786 (Ct.App.1991) ("There is no question but what legal services come within the definition of this [UTPA] statute."), *aff'd in part, rev'd in part*, 310 S.C. 514, 426 S.E.2d 304 (1993) (finding UTPA claim failed on the basis no unfair act was alleged); *see also Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1024-25 (Alaska 2009) (holding the legal profession is not

exempt from UTPA coverage simply because a state supreme court has the authority to discipline attorneys for misconduct as the Rules of Civil Procedure and the Rules of Professional Conduct are not the type of ongoing, careful regulation required to trigger an exemption; the court concluded "that the attorney disciplinary system and consumer protection laws can coexist as long as the legislature does not purport to take away this court's exclusive power to admit, suspend, discipline, or disbar" attorneys).

 Despite the trial court's error in finding the UTPA is not available against the legal profession, RFT has shown no reversible error in this regard. Because RFT alleged the same facts for its UTPA claim as in the legal malpractice claim, i.e., the deceptive acts of Law Firm, which the jury has already rejected, RFT has not shown it could have established all of the necessary elements of this claim. *Cf. Hennes v. Shaw*, 397 S.C. 391, 725 S.E.2d 501 (Ct.App.2012) (holding even if the circuit court erred in directing a verdict on the plaintiff's UTPA claim based on the regulated industries exemption in the UTPA, the plaintiff failed to demonstrate sufficient evidence on all of the elements of the claim, in particular, the plaintiff failed to demonstrate the defendant's actions adversely affected the public interest; thus, the circuit court's grant of a directed verdict on this claim was affirmed).

### (3) SCUSA

RFT's challenge to the trial court's grant of a directed verdict on its claim for aiding and abetting a securities violation similarly fails. In its complaint, RFT alleged its purchase of two investment lots with accompanying buy-back agreements constituted a "security" for purposes of the South Carolina Uniform Securities Act of 2005. RFT further alleged Law Firm was civilly liable for damages under S.C.Code Ann. § 35-1-509 (Supp.2011) for not disclosing that the two lots were subject to pre-existing buy-back agreements with prior owners and that Developer did not actually own the two lots at the time it arranged for the sale to RFT. RFT also alleged Law Firm did not exercise the reasonable due care owed to RFT as an investor because it allowed Developer's untruths about the financial stability of Planters Row, as expressed by William Gilbert, to go undiscovered.

The trial court granted Law Firm's motion for a directed verdict on its claim for aiding and abetting a SCUSA violation on the basis the transaction did not involve a security. *See* S.C.Code Ann. § 35–1–102(29) (Supp.2011) (The South Carolina Uniform Securities Act of 2005 defines a "security" to mean, inter alia, "any . . . evidence of indebtedness; certificate of interest or participation in a profit-sharing agreement; . . . investment contract; . . . or, in general, an interest or instrument commonly known as a 'security'. . . .").

Even assuming, without deciding, that the transaction qualified as a security, the securities claim was based on the same factual allegations that were ultimately rejected by the jury when it returned a verdict in favor of Law Firm on the legal malpractice claim. In addition, RFT absolved Law Firm of any potential liability resulting from an allegation of aiding and abetting a securities violation when RFT signed the retainer agreement with Law Firm that expressly limited the scope of its representation. In that agreement, RFT acknowledged that it was retaining Law Firm to close the transaction, prepare a deed of conveyance, and perform ministerial acts associated with the closing. RFT further acknowledged that it had not retained Law Firm to negotiate the contract and that it was not relying on Law Firm to provide substantive advice about the transaction. Consequently, there could be no liability, so we find no error in the granting of a directed verdict on this claim.

## III. CONCLUSION

Based on the foregoing, we affirm the rulings of the trial court.

**AFFIRMED.**

PLEICONES, Acting Chief Justice, KITTREDGE, HEARN, JJ., and Acting Justice CLIFTON NEWMAN, concur.