**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Supreme Court

Jeffrey Kennedy, Petitioner,

v.

Richland County School District Two, Eric Barnes, and Chuck Earles, Respondents.

Appellate Case No. 2017-001160

———————

Appeal From Richland County
Alison R. Lee, Circuit Court Judge

———————

Memorandum Opinion No. 2019-MO-014
Heard November 7, 2018 – Filed March 20, 2019

———————

**REVERSED AND REMANDED**

———————

T. Jefferson Goodwyn Jr., and Rachel G. Peavy, both of Goodwyn Law Firm, LLC, both of Columbia, for Petitioner.

Kathryn Long Mahoney and Thomas K. Barlow, both of Halligan Mahoney Williams Smith Fawley & Reagle, PA, of Columbia, for Respondents.

———————

**PER CURIAM:** Petitioner Jeffrey Kennedy worked as a security guard for Richland County School District Two. Respondents Chuck Earles and Eric

Barnes, also employees of Richland Two, believed Kennedy stole cash from the office of the athletic director of Spring Valley High School. Respondents took disciplinary actions against Kennedy based on their belief that Kennedy was the thief. Kennedy then filed a defamation suit against Respondents. The jury returned a verdict of actual and punitive damages against Respondents Earles and Barnes. Respondents appealed on numerous grounds, including the failure of the trial court to grant their directed verdict and judgment notwithstanding the verdict (JNOV) motions based on their claim of a qualified privilege. The court of appeals reversed, holding that Respondents acted within their qualified privilege. *Kennedy v. Richland Cty. Sch. Dist. Two*, Op. No. 2017-UP-040 (S.C. Ct. App. filed Jan. 25, 2017). We granted a writ of certiorari. We reverse the court of appeals, which ignored the standard of review. Viewing the evidence and reasonable inferences in a light most favorable to Kennedy, as the standard of review requires, a jury question was presented regarding whether Respondents exceeded the scope of their qualified privilege. Accordingly, we reverse and remand to the court of appeals for consideration of Respondents' remaining issues.[1]

## I.

Kennedy was a security guard for Richland Two. As a security guard, Kennedy was supervised by the Emergency Services Manager, Respondent Earles, and the Assistant Security Manager, Respondent Barnes. Kennedy's duties included patrolling schools, setting alarms, responding to calls, checking doors and windows, and generally observing the premises of Richland Two schools. Spring Valley High School was Kennedy's base school, but he also had responsibility for seven other schools.

On March 4, 2011, Spring Valley's athletic director reported $1,000 in cash left under his desk the previous night was missing. The athletic director's office is located in the athletic department building of Spring Valley High School, known as

---

[1] Respondents alleged other grounds for relief on appeal, including the trial court erroneously: (1) denied their motion for JNOV regarding the individual capacity claims under the South Carolina Torts Claims Act; (2) denied their motion for JNOV regarding punitive damages; (3) denied their motion for a new trial absolute or *nisi remittitur*; (4) affirmed the constitutionality of the punitive damages award; (5) excluded evidence of Kennedy's alleged theft and termination from a subsequent employer; and (6) failed to instruct the jury that no defamatory communication accompanied Kennedy's termination from Richland Two.

Bates Hall. Several people had keys to this office, including Kennedy, the custodial staff, and the athletic coaches.

Kennedy was on duty the night of the alleged theft, and as a result, he set the alarm in Bates Hall that night and turned the alarm off the next morning. Sometime between when Kennedy initially set the alarm and when he turned it off the next morning, the baseball team returned from a game and set off the alarm in Bates Hall. Kennedy was called to respond, but he did not enter the building because he observed the baseball team inside as well as the baseball coach disarming and re-setting the alarm.

Following the reported theft, Respondents reviewed the videotape footage from the time Kennedy set the alarm to when he turned it off. There were only two cameras with recorded images, including one that showed traffic going by outside and one showing the exit and entrance to Bates Hall. Neither of these cameras covered the athletic director's office—the location of the reported missing funds. The videotape of the entrance to the building showed Kennedy turning off the alarm around 5:50 A.M. and leaving the camera's viewing range for about five minutes before exiting the building again.

After reviewing the inconclusive footage of the videotape, Respondents believed Kennedy was the thief and questioned him twice about the incident in the presence of Human Resources staff. Respondents performed no further investigation and specifically did not interview others who were present in the building that night and had access to the athletic director's office, including coaches, players, and custodial staff. Instead, Respondents turned over the video footage to the Richland County Sheriff's Office. The Sheriff's Office declined to bring charges against Kennedy. Respondents nonetheless continued to believe Kennedy was the thief. Barnes was so adamant Kennedy was the thief that he wanted Kennedy fired following the incident.

On June 15, 2011, Earles informed Kennedy that he would no longer be permitted to perform normal security guard duties and that he would not be allowed to possess keys to any buildings or offices. Kennedy was reassigned to answering phones and performing watch room duties. On the same day, Earles sent out an e-mail to other district security supervisors labeled "confidential." The e-mail provided:

> Mr. Kennedy will be reporting to work tomorrow night . . . . I have told him that he will be assigned to work the watch room answering phones and performing whatever other duties are necessary in the

watch room. H[e] is NOT to be given any assignment that involves having keys to any District facility.

Kennedy later saw a printed version of this e-mail in an unsecured security vehicle, shared by non-supervisory district security officers. Additionally, at least two non-supervisory security officers saw a printed version of the supposedly confidential e-mail in their unsecured workspace. There was further evidence that Barnes told another non-supervisory officer that Kennedy was not supposed to have keys or drive vehicles without telling the non-supervisory officer to keep the information confidential. These non-supervisory officers claimed the confidential e-mail and Barnes's statements made it obvious that Respondents believed Kennedy was the thief.

The jury was charged on the law, including qualified privilege. The jury returned a verdict in favor of Kennedy. Respondents appealed, and, following the court of appeals' decision that, in its view, the evidence established Respondents were entitled to the qualified privilege, we granted Kennedy's petition for writ of certiorari.

## II.

The issue before the Court is whether the evidence, when viewed in a light most favorable to Kennedy, created a question of fact as to whether Respondents exceeded the scope of their qualified privilege. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012) ("When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this Court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party."). Under the proper standard of review, we firmly conclude that the trial court correctly denied the directed verdict and JNOV motions, for the evidence presented a question of fact as to whether Respondents exceeded the scope of their qualified privilege. The court of appeals erred in reversing the trial court on this issue.

Generally, in order to state a claim for defamation, the plaintiff has to prove: "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Fountain v. First Reliance Bank*, 398 S.C. 434, 441, 730 S.E.2d 305, 309 (2012) (citation omitted). However, the analysis changes slightly

when a qualified privilege exists.  A qualified privilege arises when there is "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Id*. at 444, 730 S.E.2d at 310 (citation omitted).

The privilege does not protect defendants who (1) exceed the scope of the privilege by going beyond what is reasonable under the duties or interests involved or (2) act with actual malice.  *Id*; *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999).  Actual malice is defined as acting with ill will or reckless disregard for the victim's rights.  *Swinton Creek Nursery*, 334 S.C. at 485, 514 S.E.2d at 134.  Ordinarily, it is for the jury to decide whether the privilege has been abused or exceeded.  *Id*.

Given Respondents' incomplete and cursory investigation and evidence that the supposedly "confidential" e-mail was allowed to circulate well beyond the intended recipients, Respondents were not entitled to a directed verdict or JNOV on the basis of qualified privilege.

## III.

We hold that when the evidence is viewed in the light most favorable to Kennedy, a question of fact was presented concerning whether Respondents exceeded the scope of the qualified privilege, and therefore, the trial court properly denied Respondents' motions for directed verdict and JNOV.  The court of appeals erred in reversing the trial court in this regard.  We reverse and remand to the court of appeals to address the other issues raised by Respondents in their initial appeal.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**