# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Road, LLC and Pinckney Point, LLC, Plaintiffs,

of which Road, LLC is the Appellant,

v.

Beaufort County, a political subdivision of the State of South Carolina, Respondent.

Appellate Case No. 2017-001736

---

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

---

Opinion No. 5807
Heard June 16, 2020 – Filed March 3, 2021

---

**AFFIRMED**

---

John Phillips Linton, Jr. and George Trenholm Walker, both of Walker Gressette Freeman & Linton, LLC, of Charleston, for Appellants.

C. Mitchell Brown, Allen Mattison Bogan, and Nicholas Andrew Charles, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Mary Bass Lohr and Robert W. Achurch, III, both of Howell Gibson & Hughes, PA, of Beaufort, for Respondent.

---

**LOCKEMY, C.J.:** In this breach of contract action, Road, LLC and Pinckney Point, LLC (Pinckney) (collectively, Developers) appeal the trial court's order

granting Beaufort County's (the County's) motion for judgment notwithstanding the verdict (JNOV). Road, LLC argues the trial court erred by finding that (1) there was no evidence to support the jury's finding of breach of contract, (2) the $5 million in damages were speculative, and (3) the contract was a nullity. We affirm.

**FACTS/PROCEDURAL HISTORY**

This case involves two adjacent tracts of land: the first is a northern 229-acre tract (the Point Tract), and the second is a .85-acre isthmus (the Road Parcel), which connects the Point Tract to Bluffton. The only way to access the Point Tract was by Pinckney Colony Road (Colony Road), which crosses over the Road Parcel. Pinckney bought the Point Tract on March 31, 2006, with $5.7 million cash and financed another $5 million through BB&T. Pinckney intended to build a residential development on the land. When Pinckney purchased the Point Tract, the seller was in the midst of litigation with the County over whether Colony Road was a public or private road (the Road Action). Pinckney applied for a variance to shift Colony Road within the river bluff, the County denied the application, and Pinckney appealed (Variance Action).

In 2010, BB&T sold Pinckney's note and mortgage to Equity Resource Partners (ERP). In December 2011, Pinckney deeded the Point Tract to ERP in lieu of foreclosure and paid ERP $125,000 for an option to buy back the Point Tract for $6.5 million. This option was set to expire on August 31, 2012. Pinckney extended the option until February 28, 2013, for an additional $375,000.

During development of the Point Tract, the County required Pinckney to acquire a separate variance for the water line. This required Pinckney to acquire permission from Dorothy Gnann and Agnes Pinckney (Agnes), owners of the Road Parcel, to add utility lines along Colony Road. In order to facilitate that permission, Pinckney wanted to buy the Road Parcel, but could not afford the $1.3 million needed to acquire it. Subsequently, John Kunkel, a manager for Pinckney, and Bruce Bunner established Road, LLC, through which they purchased the Road Parcel.

Road, LLC and Pinckney then entered into an agreement (the Road Agreement), which provided Road, LLC would sell the Road Parcel to Pinckney for $5 million on November 30, 2013. Road, LLC and Pinckney also recorded an easement granting Pinckney a twenty foot right-of-way across the Road Parcel. The easement stated it was for the benefit of the "Grantee and for the benefit of any and

all other occupants of Grantee's Property, and for its respective subtenants, licensees, customers, agents, employees, invitees, mortgages, successors and assigns."

In January 2011, the County; the County's zoning board; Pinckney; Road, LLC; Agnes; and Gnann entered into a settlement agreement (the Agreement), which settled both the Road Action and the Variance Action. Specifically, the Agreement stated the "Road Parcel is and shall be a private road for the use and benefit of those parties described in the Right of Way and Easement Agreement." The Agreement further provided that Road, LLC would convey the Road Parcel to Pinckney in accordance with the Road Agreement. Further, the County agreed the Road Parcel provided sufficient access for the development of the Point Tract in accordance with the Beaufort County Zoning and Development Standards Ordinance. The Agreement also granted Pinckney the variance to relocate Colony Road.

In November 2012, the Beaufort County Land Trust (Land Trust) was contacted by a broker for ERP regarding the Point Tract and the Land Trust determined the property should be conserved.

ERP extended Pinckney's option until March 11, 2013; however, Pinckney failed to secure an investor to fund the repurchase, and the option expired. On March 14, 2013, the County's Rural and Critical Lands Board received and approved an offer to purchase of the Point Tract from ERP for $6,950,000. The County council approved the purchase of the Point Tract on April 8, 2013, and signed the contract for the purchase the Point Tract on April 24, 2013. On May 21, 2013, Developers (Pinckney, LLC and Road, LLC) filed their first complaint seeking declaratory and injunctive relief prohibiting the sale of the Point Tract to the County based on the Agreement. The County closed on the Point Tract on May 28, 2013. Following the closing, Developers sought declaratory and injunctive relief prohibiting the County from using Colony Road for public access, an order of specific performance that the Road Parcel and Point Tract only be used for a residential community, and damages for breach of the Agreement.

At the August 25, 2016 trial, the trial court found there was a latent ambiguity in the Agreement, which required the admission of extrinsic background evidence. Taylor Bush, the manager for Pinckney, testified to the following on direct examination:

> Q: How many cases were there at this point?

A: There was the dock case.[1] There was the [Variance
Action]. There was the [R]oad [Action].
Q: What was the [Agreement] to do?
A: It was to resolve everything necessary for us to
develop the property.

The County objected based on the parol evidence rule, and the trial court overruled the objection. Bush testified the County required Pinckney to change the development plan from sewer to septic, collect individual soil samples, and acquire septic permits for each lot, which were not required by ordinance. Bush testified that the request for individual lot permits caused a nine-month delay and obtaining individual permits was unrealistic. He explained these septic delays caused Pinckney to default on the loan. He stated Pinckney completed all permitting with the County in February 2012.

Bush stated Pinckney wanted to repurchase the Point Tract, but was unable to complete the entitlements necessary to acquire an investor. He testified that if Pinckney had been granted another 120-day option from ERP, it could have acquired the remaining approvals needed for the Point Tract. Bush testified the County granted the variance as required by the Agreement.

John Kunkel stated Pinckney could not acquire investment to buy back the loan from ERP because they did not have the permits and approvals in place. Kunkel explained that if Pinckney had 120 more days, they would have acquired an investor because they were 95% complete. Kunkel stated Pinckney lost between $5.7 million and $8.5 million in profit. He explained that after the County purchased the Point Tract, Colony Road was kept open and the road was in a better condition than it was before the purchase. Kunkel testified that on March 5, 2013, Silver Point, LLC was interested in investing, but Pinckney rejected Silver Point, LLC's terms. He admitted ERP could sell the Point Tract to whomever they wanted.

Walter Nester, Pinckney's attorney, stated the County required Pinckney to use septic tanks on the Point Tract. He testified Pinckney acquired a permit for a development-wide septic system; however, during development, the South Carolina Department of Health and Environmental Control (DHEC) regulations changed, requiring individual permits for each lot. Nester stated DHEC agreed

---

[1] The County and Pinckney had a third action over the number of docks Pinckney was granted on the Point Tract. The dock action was not part of the Agreement.

Pinckney's development-wide permit remained valid; however, the County required Pinckney to obtain individual permits for final review. Nester stated that because there was no conditional approval for the septic system, Pinckney's engineering efforts were delayed. Nester stated that on February 23, 2012, the County approved the use of their development-wide permit. He agreed Pinckney faced unusual hurdles during development but admitted the septic issue was the only issue Pinckney had with the County regarding approvals.

Thomas Hartnett, an expert in land appraisals, testified the Road Parcel was worth $5 million at its highest and best use, which was as an access point to a residential development. He agreed that the Road Parcel was still worth $5 million after the County purchased the Point Tract and explained that any party wishing to develop the Point Tract would have to pay $5 million for the Road Parcel.

Gary Kubic, the County Administrator, testified the County had been interested in purchasing the Point Tract since 2003. He stated he approved the Agreement on behalf of the County and admitted he knew Pinckney wanted to build a residential development on the Point Tract. Kubic stated that, to his knowledge, the County had done nothing to restrict access to the Point Tract following the County's acquisition and any taxpayer could access the Point Tract via Colony Road. He testified the County wanted to prevent the development of the Point Tract.

The County moved for a directed verdict. The trial court denied the motion, finding there was evidence from which the "jury could determine that there was a breach of contract."

John H. Irby, one of the owners of ERP, testified via deposition that ERP was not interested in another option with Pinckney; however, if Pinckney had been able to close, they would have sold them the Point Tract.

At the close of the County's case, it again moved for a directed verdict, arguing there was no evidence of a breach of contract, and Pinckney suffered no damages because Hartnett testified the Road Parcel was still worth $5 million. The trial court denied the County's motion, reasoning "there [we]re facts that were testified to [from which] this jury could conclude there was a breach of contract."

In their closing argument, Developers asserted: "[T]he settlement agreement clearly required that the road was private. Everybody agreed it was private; no dedication; no public use. Judge Dukes entered a court order; we looked at it two

times; this road is private. And the County has not treated it as private." They further argued:

> As to Road, LLC, what is the breach there? Well, it's that the County is treating it like it's a public road, and the private property is public property, they're contending. They haven't gated it. Their testimony was they had not gated it. The testimony was there were no signs saying you cannot come here. The testimony was that they treat it like a public road.

The jury found the County did not breach its contract with Pinckney; however, it found the County breached its contract with Road, LLC and awarded $5 million in damages.

The County filed a motion for JNOV as to Road's breach of contract claim. The County argued the Agreement only obligated it to do two things—(1) grant the road variance and (2) agree the road was private—and it had already fulfilled those requirements. The County argued there was no latent ambiguity in the Agreement, no evidence Pinckney was treated differently than any other developer, and no evidence the County delayed permitting for the Point Tract. Further, the County asserted the jury verdict as to Pinckney supported the finding there was no evidence the County breached as to good faith and fair dealing against Road, LLC because their claims were interconnected. The County argued it did not breach the implied covenant of good faith and fair dealing because when Pinckney's option ended, Pinckney could no longer meet its obligation under the Agreement; thus, the Agreement became a nullity. The County asserted the only testimony about the value of the Point Tract was that it was still worth $5 million, and any damages were speculative because there was no certainty Pinckney would acquire the funds needed to turn the tract into a residential community. The County also argued if it used the right-of-way as a public road, the appropriate remedy was an injunction or rule to show cause, and that Road, LLC did not show it caused $5 million in damages by violating the private road clause of the Agreement.

The trial court granted the County's motion for JNOV and entered judgment for the County. The trial court found there was no evidence to support a finding that the County breached the express terms of the Agreement. Specifically, it found the County complied with its obligation to (1) grant the road variance for Pinckney and (2) agree the road was private. The trial court altered its previous ruling and held there was no latent ambiguity in the Agreement and the plain reading of the

Agreement did not bind the Point Tract to be used forever as a residential development. It also found the right-of-way was not converted into a public road by the County's purchase of the Point Tract because there was no evidence the County invited the public to use the property or evidence the public used the road. Further, the court found a private road purchased by a government agency does not de facto become a public road.

The trial court found Pinckney had an easement over the Road Parcel, which runs with the land. The trial court also found there was no evidence the County breached the implied covenant of good faith and fair dealing. The trial court found the evidence does not support the assertion the County held up Pinckney's permitting and found Pinckney was treated like any other developer.

The trial court found there were no issues between the County and Pinckney as of February 2012 and Pinckney had over a year to submit for final approval but failed to do so. The trial court held: "There is no evidence that Pinckney . . . was treated in any way differently than any other developer. There is evidence in the record that the County's actions did not cause Pinckney . . . to fail to meet their obligations under the settlement agreement, but rather, Pinckney['s] . . . own actions did." The trial court further held that by the time the County purchased the Point Tract, the Agreement was a nullity because Pinckney could no longer meet its obligations under the contract.

The trial court also held that even if there was evidence to support a breach of contract claim, Developers failed to present any evidence of $5 million in damages. The court found the only evidence as to the current value of the Road Parcel was from Hartnett, who stated the value of the tract was still $5 million; thus, there was no evidence the Road Parcel lost any value. Additionally, the trial court held the loss of profit was too speculative because Road, LLC's profit was dependent on Pinckney acquiring an investor to repurchase the Point Tract. The trial court stated Developers did not offer evidence that any investor would have invested; they only posited they would have found one if the County had not interfered. This appeal followed.

**ISSUES ON APPEAL**

1. Did the trial court err by holding there was insufficient evidence to sustain the jury's verdict that the County breached the Agreement?

2.  Did the trial court err by holding there was insufficient evidence to sustain the jury's award of $5 million in damages?

3.  Did the trial court err by overturning the jury's damages verdict as "too speculative" because the damages amount was reasonably certain?

4.  Did the trial court err by overturning the jury's verdict on the alternate ground that the contract at issue was a "nullity"?

## STANDARD OF REVIEW

"When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this [c]ourt must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012).  "The trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt." *Id.* at 332, 732 S.E.2d at 171.  "In deciding such motions, neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence." *Id.*  "In considering a JNOV, the trial [court] is concerned with the existence of evidence, not its weight." *Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 320, 585 S.E.2d 272, 274 (2003).  "The jury's verdict will not be overturned if any evidence exists that sustains the factual findings implicit in its decision." *Boddie-Noell Props., Inc. v. 42 Magnolia P'ship*, 344 S.C. 474, 482, 544 S.E.2d 279, 283 (Ct. App. 2000), *aff'd as modified*, 352 S.C. 437, 574 S.E.2d 726 (2002).

## LAW/ANALYSIS

Road, LLC argues the trial court erred in holding there was no evidence of $5 million in damages.  Road, LLC asserts the trial court erred by relying solely on Developers' expert witness's testimony that the Road Parcel was still worth $5 million, instead of determining if there was any evidence to support $5 million in damages.  Road, LLC further argues the trial court erred in finding the damages were speculative and depended upon an investor.  We disagree.

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009).  "The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a

natural consequence and a proximate result of such breach." *Id.* (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962)). "In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed." *Id.* (quoting *S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 303 S.C. 74, 77, 399 S.E.2d 8, 10 (Ct. App. 1990)). "The measure of damages for breach of contract is the loss actually suffered by the contractee as the result of the breach." *S.C. Fin. Corp. of Anderson v. W. Side Fin. Co.*, 236 S.C. 109, 122, 113 S.E.2d 329, 335 (1960). "[P]rofits that have been prevented or lost as the natural consequence of a breach of contract are recoverable as an item of damages in an action for such breach." *Id.* at 122, 113 S.E.2d at 335–36.

"Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 43, 691 S.E.2d 135, 146 (2010) (quoting *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981)). "While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required." *Id.* (quoting *Whisenant*, 277 S.C. at 13, 281 S.E.2d at 796).

We must determine whether evidence was presented to the jury that Road, LLC suffered $5 million in damages as a "proximate result" of a breach of the Agreement. *See Branche Builders, Inc.*, 386 S.C. at 48, 686 S.E.2d at 202 ("The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a *proximate result* of such breach." (emphasis added) (quoting *Fuller,* 240 S.C. at 89, 124 S.E.2d at 610)). First, the jury was presented with no evidence Road, LLC was damaged by the County treating Colony Road as public. A potential breach of the private road clause did not render Developers unable to develop the Point Tract, which Road, LLC asserted caused the $5 million in damages. Thus, there was no evidence Road, LLC suffered $5 million in damages due to the County's breach of the private road clause.

Second, the evidence presented at trial showed Road, LLC did not suffer $5 million in damages because Road, LLC's expert testified that the property was still worth $5 million after the County purchased the Point Tract. Thus, the evidence presented at trial indicated the value of the property did not change. Although we agree with Road, LLC's assertion that the jury can accept or reject Hartnett's testimony regarding the value of the property, without Hartnett's testimony, there

was no evidence presented to the jury regarding the value of the Road Parcel. *See Smith v. Safeco Life Ins. Co.*, 303 S.C. 131, 136, 399 S.E.2d 427, 429 (Ct. App. 1990) (order on rehearing) ("The jury is . . . free to accept a portion of a witness's testimony and reject a portion."). Thus, even if the jury ignored Hartnett's testimony about the Road Parcel's current value, there was no other evidence presented regarding the value of the Road Parcel after the County had purchased the Point Tract. Therefore, the jury would have been left to speculate as to what damages Road, LLC suffered. *See Austin*, 387 S.C. at 43, 691 S.E.2d at 146 (providing that "neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation"). Based on the foregoing, we find Road, LLC failed to present evidence it suffered $5 million in damages due to the County's breach of the private road clause.

Because we affirm the trial court's order granting the County's motion for JNOV based on damages, whether the County breached is inconsequential for the disposition of this case. Every element of a breach of contract must be proved, and our holding that Road, LLC failed to prove an element of the claim is dispositive; thus, analysis of the remaining issues is unnecessary. *See Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 617, 703 S.E.2d 221, 225 (2010) ("[A]n appellate court need not address remaining issues when disposition of a prior issue is dispositive[.]"); Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").

**CONCLUSION**

For the foregoing reasons, the trial court's order granting the County's motion for JNOV is

**AFFIRMED.**

**GEATHERS and HEWITT, JJ., concur.**