20315

The CITY OF SPARTANBURG, Appellant, v. Martha B. LAPRI-NAKOS et al., Respondents.

(230 S. E. (2d) 443)

590

*Messrs. T. E. Walsh* and *Marshall T. Walsh,* of *Gaines & Walsh,* Spartanburg, *for Appellant,*

*Matthew A. Henderson, Esq.,* of *Henderson & Lister,* Spartanburg, *for Respondents,*

December 1, 1976.

RHODES, Justice:

This is an appeal by the City of Spartanburg from a jury verdict of $70,000.00 returned for the landowners, Martha B. Laprinakos and Joanna B. Zanetakos, in a condemnation case. In seeking a new trial, the City asserts trial errors in a number of particulars. We reverse and remand.

The property in question is located on Dunbar Street in the heart of downtown Spartanburg and consists of a two-story masonry building approximately 70 years old. The parcel of land contains 2,800 square feet, and the building covers the entirety of this land area. At the time of the condemnation the first floor was occupied by two finance companies under written leases. The second floor of the building was vacant and had not been rented for about 15 years.

The city contends first that it was error for the trial judge to admit the testimony of one Elmer Mitchell Harvey as to the value of the condemned property. At the outset of the case, and out of the presence of the jury, the City examined

the witness with regard to his qualifications to testify as an expert on behalf of the landowners. After such questioning the trial judge ruled that the witness was disqualified as an expert "in the field of real estate", but the court permitted Harvey to give his opinion as to the fair market value of the property based on two methods: (1) the cost of replacement less depreciation approach, and (2) the capitalization of income approach. In his testimony before the jury, Harvey described his trade as follows:

"A. Well, I do building, repair work, and I do a lot of insurance work—remodeling and repairing—building new houses—some residential—well, mostly residential, some commercial building."

The witness further testified that he had been engaged in such work for approximately thirty years.

In the application of the cost of replacement less depreciation approach, Harvey's testimony was to the effect that the building in question was so old that under no circumstances would similar construction be employed today. Consequently, he based the reproduction cost on a modern building with drastically different specifications from the building condemned. Allowing this testimony was manifest error.

With regard to the capitalization of income approach, Harvey used an annual income figure which was $1,800.00 in excess of what the landowners were at that time receiving from the property. He obtained this larger figure from the testimony of one of the landowners to the effect that she intended to ask for the additional $1,800.00 for rental of the property upon the expiration of the current leases. This testimony was unilateral and speculative. Admitting it was clearly erroneous. *Carolina Power & Light Co. v. Copeland,* 258 S. C. 206, 188 S. E. (2d) 188 (1972); *City of Chicago v. Giedraitis,* 14 Ill. (2d) 45, 150 N. E. (2d) 577 (1958).

There is no presumption that a witness is competent to give an opinion as to the value of real property; his competency must be shown. In making such a showing, however, it is not required of the witness that he be expert or skilled in the strict sense of those terms. It is universally recognized that opinion testimony of a non-expert who has sufficient knowledge of the value of the property in question, or who has had ample opportunity for forming a correct opinion of it, is admissible. If he is one other than the owner of the property in question, it must be demonstrated that he has some source of knowledge of the value of the property in order to remove his opinion from the realm of mere conjecture. A bare declaration that he knows the value is insufficient. Whether a witness is properly qualified is a question primarily addressed to the sound discretion of the trial judge, and his ruling will not be reversed in the absence of a showing that he has abused that discretion. It is not necessary that a witness have the status of a professional appraiser or dealer in the class of property in question. One who has bought and sold similar property is competent to give an opinion as to the value of the property, provided, of course, that he is familiar with that property. 31 Am. Jur. (2d), Expert and Opinion Evidence, § 133.

The record reveals that Harvey did not know for what use the property in question was zoned, although he conceded that this fact would determine to a great extent, the value of the property. After testifying that property in downtown Spartanburg was renting for three or four dollars per square foot, he later stated that he did not know what was being paid for such property; he knew only what owners were asking for it. The record shows also that Harvey was totally unfamiliar with the two leases on the property, their duration, or their own terms and conditions. It is further evident that he had never been in the second floor of the building; that he had never bought or sold a piece of property in downtown Spartanburg; and

that he was not familiar with property in downtown Spartanburg such as that condemned. Furthermore, he testified that he did not know the value of the lot and was not familiar with land values in downtown Spartanburg. Under these facts we find that the court committed prejudicial error in admitting the testimony of this witness with respect to the value of the property. Harvey's attempted application of the cost of replacement less depreciation method and the capitalization of income approach to determine the value of the property, as discussed previously, demonstrates a lack of the necessary competence to testify.

The appellant complains that error was committed in allowing the landowners' counsel to cross-examine one Woodrow Willard, a qualified real estate expert testifying for the City, as to an estate appraisal. Willard was cross-examined with regard to what the property was appraised for during the administration in 1970 of the estate of George Bobotes, the uncle of the landowners and the person from whom they inherited the property. The question of the admissibility of evidence of the appraisal was presented to the court prior to the start of the trial. At that time, the court ruled this evidence inadmissible. During the trial, counsel for the landowners attempted to elicit the contents of the appraisal from one of the landowners, but this testimony was likewise excluded by the trial judge. However, despite these previous rulings, the court allowed counsel, during cross-examination of Willard, to ask the witness if he was aware of the valuation placed on the property in 1970 by the estate appraisers. Willard answered that he had not seen the appraisal but had only heard from the landowners' counsel what the amount was. The appellant objected and moved for a mistrial on the grounds that the evidence had already been excluded by the court and that it was prejudicial and improper in that the witness was being cross-examined on an appraisal made by persons not subject to cross-examination. The court denied all of the motions.

The testimony elicited by the landowners' counsel relating to the appraisal of the Bobotes estate was patently inadmissible. The courts of this State follow the rule that the scope of cross-examination, while generally broad, must relate to matters pertinent to the issues or be such as tends to affect the credibility of the witness. *Spears v. Collins,* 253 S. C. 510, 171 S. E. (2d) 606 (1970) ; *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607 (1967). Willard's knowledge of the estate appraisal was based purely on hearsay. This subject matter could have been used only for impeachment purposes if the witness had considered this information and based his opinion on it. However, there is no indication in the record of his having done so.

The City also objects to the trial court's permitting testimony by one of the landowners regarding correspondence between a former mayor of Spartanburg and a former owner of the property in question. The landowner was allowed to testify that her uncle had received a letter from the mayor stating that the subject property would not in the future be condemned for urban renewal. The subject matter of this letter had no relevancy to the issues in this case and, for this reason, should have been excluded.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.