1805

Darrell E. ROLAND and Deborah H. Roland, Respondents v. PALMETTO HILLS and Dunes Construction Company, Inc., Fred L. Smith, Larry Smith and The Smith Company and Mellon Financial Services, of whom Palmetto Hills and Dunes Construction Company, Inc., Fred L. Smith, Larry Smith and The Smith Company are Appellants.

(417 S.E. (2d) 626)

Court of Appeals

*Michael O.W. Edens*, Columbia, *for appellants.*

*W. Rhett Eleazer*, Columbia, *for respondents.*

Heard March 11, 1992.

Decided April 13, 1992.

SHAW, Judge:

Respondents, Darrell E. and Deborah H. Roland, homeowners, brought this suit for damages in the construction of a residence. Appellants, Palmetto Hills and Dunes Construction Company, Inc., Fred L. Smith, Larry Smith and The Smith Company, appeal from a verdict for the homeowners. We affirm.

Around April or May of 1988, Mr. Roland discussed with Mr. Fred Smith the possibility of constructing a residence for the Rolands. Fred Smith instructed the Rolands to meet him at The Smith Company and it was there that the parties entered into a written contract on August 22, 1988. The contract provided for construction of a house for the sum of $49,000.

Initially, Fred Smith requested that Mr. Roland obtain the building permit in Mr. Roland's name. After Mr. Roland refused, Fred Smith obtained the permit listing The Smith Company as the general contractor. Early on, substantial problems arose in the construction of the house. Mr. Roland testified to numerous defects and deficiencies and the record shows the Lexington County building inspector's office placed a stop work order on the construction on September 21, 1988. Construction, however, continued on the house. Several subsequent inspections occurred but, because major problems were not corrected, the building was not approved by the inspector's office.

As various problems arose, the Rolands, at first, contacted Fred Smith; however, they began having trouble with Fred Smith and thus turned to his brother Larry Smith, the owner of The Smith Company. Larry Smith told them he would handle the problem and would get Fred Smith to return to the house.

Mr. Roland's detailed testimony of defects was supplemented and corroborated by his witness, Charlie Mulkey, who inspected the house. Although Mr. Mulkey is not a licensed contractor, he testified he had over twenty years of experience in construction and his work history included much bidding and estimating. Further, he has been involved in numerous construction projects with both single family and multi-family residences and has done some remodeling. Appellants objected to the admission of Mr. Mulkey's testimony. The trial judge allowed the testimony stating as follows:

It will be a question for the jury, to decide what credence should be given his testimony. I don't declare him to be an expert. I am going to let him testify based upon his experience. And the jury will judge that based upon his experience.

Mr. Mulkey's extensive testimony on defects in the house ranges from major to minor deficiencies and includes everything from the foundation to the roof. He testified, although most of the problems could be corrected, there were some substantial defects that he was unaware of a means for correcting.

The most glaring defect testified to by Mr. Mulkey and the building inspector was the fact that the house had been built on a single band[1] instead of a double band as required by the building code. The following testimony of Mr. Mulkey appears in the record.

Q. Can the house get along with just that single band?
A. It will probably stay like that awhile, yes. But over a period of time you have a deflection. It could turn this way or that way, or whatever, depending on the settlement of the house, over a period of time.
Q. What would happen if it turned?
A. I guess from the weight of the house, it could go right on over, you know, if it gave enough.
Q. Is there any way to correct that problem, the single band versus the double band?
A. I don't know how you would do that. I don't have the answer for that.

When the building inspector was asked how it could be corrected he stated, "Jack it up; put another one under it is all I know."

Mr. Mulkey testified it would cost $60,000 to correct the defects, it would cost more than the contract price to repair the house, and it would be more difficult to correct the problems than to simply start over. The matter was submitted to the jury which returned a verdict for the Rolands for $52,500 against Palmetto Hills and Dunes Construction Company, Inc.,

---

[1] A band is the joining of a series of 2" x 10" slabs that encompass the entire perimeter of the base of a house.

Fred L. Smith, and The Smith Company. Upon motion, the trial judge reduced the verdict to $49,000, the contract price.

The appellants raise three issues on appeal. They first contend the trial judge erred in admitting the testimony of Mr. Mulkey as to damages to the house. They argue he did not qualify as an expert and his testimony on damages was too speculative. We disagree.

Whether a witness is properly qualified is a question primarily addressed to the sound discretion of the trial judge and his ruling will not be reversed absent a showing of abuse of discretion. *City of Spartanburg v. Laprinakos,* 267 S.C. 589, 230 S.E. (2d) 443 (1976). Opinion testimony of a nonexpert who has sufficient knowledge of the value of the property in question, or has had ample opportunity for forming a correct opinion of it, is admissible. *Id.* Further, the cost of repair or restoration is a valid measure of damages for injury to a building. *Scott v. Fort Roofing and Sheet Metal Works, Inc.,* 299 S.C. 449, 385 S.E. (2d) 826 (1989). Based upon the record before us, we find no abuse of discretion.

The other two issues raised by appellants assert error on the part of the trial judge in failing to grant a judgment notwithstanding the verdict or a new trial. They argue the evidence submitted to the jury was insufficient to support a verdict against The Smith Company and the damages were excessive based on the evidence presented.

Although the record contains the motions for judgment notwithstanding the verdict and new trial, there is no such showing of a directed verdict motion.[2] A motion for judgment notwithstanding the verdict is a renewal of the directed verdict motion and cannot raise grounds beyond those raised in the directed verdict. *Glover v. N.C. Mutual Life Insurance Company,* 295 S.C. 251, 368 S.E. (2d) 68 (Ct. App. 1988). Further, there is no indication how the trial judge ruled on these motions. The only post verdict ruling contained in the record is that where the trial judge granted a remittitur reducing the verdict to $49,000, and indicated acceptance of this reduction by the respondents. While the record is confusing on this matter, it appears the appellants, and not the re-

---

[2] The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review. *Windham v. Honeycutt,* 290 S.C. 60, 348 S.E. (2d) 185 (Ct. App. 1986).

spondents as indicated by the order, moved for a new trial nisi remittitur which was granted by the trial judge and accepted by the respondents. In such a situation, where the party ruled against agrees to the suggested amount, he may not complain, and the prevailing party, having asked for the relief, must likewise be content with the determination. *Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984). Finally, we find the evidence of The Smith Company involvement in the building of the home and the testimony of Mr. Mulkey as to damages support the verdict.

Affirmed.

SANDERS, C.J., and GOOLSBY, J., concur.