**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The Grapevine of Riverwalk, Inc., Respondent,

v.

Riverwalk River District Building 6, LLC, Mark S. Mather, GRH Development Resources, LLC, The Greens of Rock Hill, LLC, and Assured Administration, LLC, Appellants.

Appellate Case No. 2022-000580

———————

Appeal From York County
William A. McKinnon, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-275
Heard December 4, 2024 – Filed July 30, 2025

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Ian Scott Ford and Ainsley Fisher Tillman, both of Ford Wallace Thomson LLC, of Charleston, for Appellants.

Stephen Lynwood Brown and Russell Grainger Hines, both of Clement Rivers, LLP, of Charleston, for Respondent.

———————

**PER CURIAM:** Riverwalk River District Building 6, LLC (Riverwalk), Mark Mather, GRH Development Resources, LLC (GRH), the Greens of Rock Hill, LLC (the Greens), and Assured Administration, LLC (Assured) (collectively, Appellants) appeal the jury's verdict in favor of and the trial court's award of attorney's fees and grant of specific performance to the Grapevine of Riverwalk, Inc. (Grapevine). Appellants argue the trial court erred by (1) denying Riverwalk's motion to strike Grapevine's jury trial demand as to its claims against Riverwalk when Grapevine waived its right to a jury trial; (2) failing to find Riverwalk was entitled to judgment as a matter of law on the question of whether Grapevine exercised an option to purchase under the commercial lease agreement's (the Lease's) clear requirements; (3) granting specific performance in the absence of a binding real estate purchase contract; (4) finding the Lease allowed one tenant the exclusive use of common areas; (5) denying Appellants' motion for judgment notwithstanding the verdict (JNOV) on Grapevine's negligent misrepresentation claim; and (6) awarding Grapevine $404,934.75 in attorney's fees and costs. We affirm in part, reverse in part, and remand.

**FACTS**

This case arises from a dispute over a commercial lease between Riverwalk and Grapevine. Riverwalk owns Building 6, located within a mixed-use development project in Rock Hill. In June 2014, after several months of negotiation, Grapevine, which operated a wine and craft beer shop, entered the Lease with Riverwalk. It provided Grapevine would lease from Riverwalk a 1,490 square foot unit (the Premises) within Building 6 for a ten-year term. Because the building had not yet been constructed at the time, the Lease did not commence until February 2016.

The Lease included an option to purchase (the Option), which provided:

> Tenant shall have the Option to purchase the Premises during the third lease year with not less than 120 days advanced written notice to Landlord for $270,000.00 (the "Purchase Price") in accordance with the Purchase and Sale Agreement as provided in Exhibit G. Landlord shall apply $25,000 of Rent collected and the Security Deposit[1] against the Purchase Price at the time of closing. Upon the purchase of the Leased Premises by this Tenant, this Lease shall be terminated.

---

[1] Grapevine paid a security deposit of $6,705.00.

The Purchase and Sale Agreement (the PSA), attached to the Lease as Exhibit G, provided the details of the purchase price, including that the total deposit for the unit would be $50,000, consisting of a $25,000 security deposit and a $25,000 deposit due upon execution of the PSA. The PSA also provided a space to fill in the closing date. The PSA referenced a Master Deed but did not include a Master Deed or any information pertaining to the recording of any Master Deed. The PSA included a section called "Deposit," which provided,

> The Deposit shall be made payable to and held in escrow and remain in escrow until the Closing or upon the termination of this Agreement prior to the Closing with the _____ (the "Escrow Agent") in a non-interest bearing federally insured account subject to the rights of the Buyer and Seller hereunder.

The "Attorneys/Brokers" section for the buyer's and seller's attorneys and the escrow agent was also blank.

The Lease commenced on February 2, 2016. On July 26, 2017, Grapevine's prior counsel, Brian Wilson, sent a letter to Riverwalk regarding the "Exercise of Option to Purchase." The letter stated, in pertinent part,

> THIS LETTER CONSTITUTES NOTICE, pursuant to paragraph 33 of the Lease, of its intent to exercise its purchase option for a closing date of February 2, 2018, which is during the third lease year. The closing will occur at 10:00 a.m. in at [sic] my office address indicated above.
>
> Exhibit G to the Lease sets forth the parameters of the purchase with more specificity. A review of records filed with the South Carolina Secretary of State and with the York County Clerk of Court does not reveal the existence of the condominium project, yet. Please take the necessary steps to create the horizontal property regime and provide me with a copy of such documentation.

Wilson repeatedly asked Riverwalk to create and record the horizontal property regime and to agree to the proposed closing date or propose an alternate closing

date.  Riverwalk eventually sent draft documents pertaining to the creation of a horizontal property regime on January 30, 2018.  However, no closing ever occurred.

On December 10, 2018, Grapevine commenced this action against Riverwalk asserting several causes of action, including breach of contract based upon Riverwalk's failure to close the sale and its refusal to allow Grapevine to use the common areas as set forth in the Lease.  Grapevine later amended its complaint, adding the remainder of Appellants as defendants.  Grapevine also added a claim for negligent misrepresentation, arguing a representative of Riverwalk falsely stated Riverwalk's lender would require Grapevine to lease the Premises for two years before they could purchase the property.

This case proceeded to a jury trial.  Ultimately, only Grapevine's claims for breach of contract by Riverwalk as to the Option and as to the use of the common areas provisions in the Lease and negligent misrepresentation and civil conspiracy as to all Appellants were submitted to the jury.

During trial, Melanie Sills testified she and her husband, David Sills, owned Grapevine.  Melanie recalled Wilson sent a letter to Riverwalk on July 26, 2017, giving advance written notice of Grapevine's intent to exercise the Option.  She averred Exhibit G to the Lease contained the "outline" of a purchase and sale agreement, which would be completed when Grapevine exercised the Option.  She stated Wilson's letter proposed February 2, 2018, as the closing date because this would have been the first day of the third lease year.  Melanie testified Wilson was in "constant contact" with representatives of Riverwalk after sending the letter in attempts to complete the sale on the proposed closing date.  She testified Grapevine was ready, willing, and able to purchase the space on February 2, 2018, and had cash to fund the purchase.  Melanie agreed closing did not occur on February 2, 2018, and stated Grapevine continued to pursue a closing date.

On cross-examination, Melanie admitted Grapevine never tendered a contract in the form of the PSA, explaining they did not "have the information to fill in these blanks" and the condominium documents were not included.  Melanie further admitted Grapevine never tendered a $25,000 earnest money deposit.

Wilson testified the PSA was a "template for what a proposed future contract might look like should the tenant exercise[] their option to purchase."  He explained it could not be completed until the condominium project and master deed were created and recorded.

Wilson testified that on March 27, 2018, he sent an email to Debbie McMillan, the office manager for GRH, stating, "[I]t appears the condo documents have been created and are ready to be recorded by the developer.  The Grapevine is ready, willing and able to perform their purchase.  Is the developer ready to complete the sale?  Please advise."  Wilson testified that to his knowledge, Riverwalk never completed the horizontal property regime.

At the conclusion of Grapevine's case, Appellants moved for a directed verdict as to all of Grapevine's causes of action.  The trial court allowed Grapevine's claim for negligent misrepresentation to proceed only as to a statement David Williams, a representative of Riverwalk, made to the Sills in which he stated Riverwalk's lender required a two-year lease before Grapevine could purchase the Premises.  The trial court denied the motion as to the remaining claims.

During Appellants' case-in-chief, Riverwalk's prior counsel, Todd Brockman, testified he had been tasked with creating a horizontal property regime so that the Premises could be sold.  He testified the third lease year would have begun March 1, 2018, and the last day for Riverwalk to perform would have been February 28, 2019.  Brockman stated the master deed and bylaws were not recorded because "[he] would never record those until [the parties] were completely ready to close."  He admitted that creating the horizontal property regime was in the seller's control.

At the close of all the evidence, Appellants renewed their directed verdict motion as to Grapevine's claims for civil conspiracy and negligent misrepresentation.  As to negligent misrepresentation, they argued only that no evidence showed Grapevine relied on Williams's statement to its detriment.  The trial court denied Appellants' motion.

The jury found in favor of Grapevine as to all claims except civil conspiracy.  The jury awarded Grapevine $221,700 on its claim of breach of contract as to the Option; $146,124 on its claim for breach of contract as to the use of the common areas; and $96,800 on its claim for negligent misrepresentation.

The trial court dismissed the jury and instructed the parties to submit posttrial motions, including the motion for specific performance, within two weeks after the conclusion of trial.  Grapevine filed its posttrial motions seven days after the trial; Appellants filed their motions fourteen days after trial.

In its posttrial motion, Grapevine moved for an entry of a directed verdict in its favor on specific performance and an order granting a remedy of specific performance based on the jury's finding that Riverwalk breached the Lease by failing to sell the Premises as required by the Option. Grapevine also moved for an award of attorney's fees and costs of $523,124.94 and $55,353.28, respectively.

Appellants made several posttrial motions, including a motion for JNOV as to Grapevine's claims for breach of contract as to the Option and use of the common areas and negligent misrepresentation. Appellants also filed a memorandum in opposition to Grapevine's motion for specific performance, arguing, among other things, Grapevine was not entitled to specific performance because its attempt to exercise the Option was ineffective as a matter of law. Specifically, Appellants argued Grapevine was required to make a $25,000 deposit under the terms of Exhibit G to the Lease. Appellants asserted Riverwalk was "entitled to 'exact compliance with the terms of the [O]ption'" and that the giving of notice was not equivalent to paying money. In addition, Appellants filed a memorandum in opposition to Grapevine's motion for attorney's fees and costs. Appellants noted that Grapevine "asserted attorney-client privilege as to each of the invoices filed in support of its motion" but did not specifically challenge the redaction.

The trial court granted Grapevine's motion for specific performance, finding the Option contained in the Lease "only require[d] advance written notice of 120 days" and "d[id] not also require the payment of the Purchase Price, or tender thereof, in order to bind the parties to the purchase." The trial court therefore concluded Grapevine exercised the Option and was entitled to specific performance because it was able and willing to perform its part of the contract. The trial court further found Riverwalk refused to set a closing date and that without the horizontal property regime, Grapevine could not purchase the Premises. The trial court found the existence of a valid contract in the Lease, the absence of an adequate remedy at law for the breach because the property was peculiar in value to Grapevine, specific performance was equitable between the parties, and the Lease was not entered by fraud, accident, or mistake. In addition, the trial court granted Appellant's motion to require election of remedy but only as to the cause of action for breach of contract as to the Option; the trial court noted Grapevine could still recover the damages awarded for breach of contract as to the use of the common areas and negligent misrepresentation.

The trial court next granted Grapevine's motion for costs and attorney's fees but reduced the award by thirty percent "to account for the non-contractual claims that are not the subject of the fee-shifting provision contained in the Lease." The trial

court awarded $404,934.75.  The trial court noted Grapevine's "billing statements make it difficult to determine and delineate the work completed in furtherance of the breach of lease claims—which [are] the only claim[s] upon which attorney['s] fees and costs may be awarded."

Appellants filed a Rule 59(e), SCRCP motion, arguing among other things, that the trial court should reconsider and reduce its award of attorney's fees because the court failed to consider that Grapevine also pursued claims against multiple other defendants who had no contractual relationship with Grapevine.

The trial court issued its final judgment and denied Appellants' Rule 59(e) motion. Appellants then moved for a stay pending appeal to this court.  Grapevine filed a motion to compel compliance with final judgment, for contempt, and for an order of non-payment of rent pending appeal.

The trial court granted Appellants' motion to stay and granted Grapevine's motions in part, ordering Appellants to file and record an amended master deed.  The trial court directed that the amended master deed must contain terms that were consistent with the South Carolina Horizontal Property Regime Act, commercially reasonable, and not unduly restrictive of Grapevine's rights, including the right to use the common areas adjacent to its space.  Appellants filed a motion to alter or amend the order, and the trial court denied the motion.  This appeal followed.

**ISSUES ON APPEAL**

I.  Did the trial court err in denying Riverwalk's motion to strike Grapevine's jury trial demand as to all claims against Riverwalk?

II.  Did the trial court err in denying Riverwalk's motion for directed verdict when Grapevine failed to exercise the Option under the Lease's clear requirements?

III.  Did the trial court err by granting specific performance?

IV.  Did the trial court err by finding the Lease allows one tenant exclusive use of the common areas?

V.  Did the trial court err by denying Appellants' motion for JNOV on the negligent misrepresentation claim?

VI.  Did the trial court err in awarding Grapevine attorney's fees?

**STANDARD OF REVIEW**

> When reviewing the denial of a motion for directed verdict or JNOV, this Court applies the same standard as the trial court. The Court is required to view the evidence and inferences that reasonably can be drawn from the evidence in the light most favorable to the nonmoving party. The motions should be denied when the evidence yields more than one inference or its inference is in doubt. An appellate court will only reverse the [trial] court's ruling when there is no evidence to support the ruling or when the ruling is controlled by an error of law.

*Fettler v. Gentner*, 396 S.C. 461, 466, 722 S.E.2d 26, 29 (Ct. App. 2012) (alteration in original) (citations omitted) (quoting *Pridgen v. Ward*, 391 S.C. 238, 243, 705 S.E.2d 58, 61 (Ct. App. 2010)).

"An action for specific performance of an option contract lies in equity." *Alexander's Land Co., L.L.C. v. M & M & K Corp.*, 390 S.C. 582, 591, 703 S.E.2d 207, 212 (2010). "In equity actions an appellate court can review the record and make findings based on its view of the preponderance of the evidence." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 290-91 (2000).

"When there is a contract, the award of attorney's fees is left to the discretion of the trial [court] and will not be disturbed unless an abuse of discretion is shown." *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993).

**LAW AND ANALYSIS**

**I.  Jury Trial Waiver**

Appellants argue the trial court erred by denying Riverwalk's motion to strike Grapevine's jury trial demand because the Lease contained a clear and conspicuous, all-caps jury trial waiver. We disagree.

We hold Appellants failed to preserve this issue for appellate review because they did not immediately appeal the trial court's order denying their motion to strike the jury trial demand. *See Foggie v. CSX Transp., Inc.*, 315 S.C. 17, 23, 431 S.E.2d

587, 590 (1993) ("Issues regarding mode of trial must be raised in the trial court at the first opportunity, and the order . . . is immediately appealable. The failure to timely appeal the interlocutory order of the trial court effects a waiver of appeal rights." (citation omitted)); *see also Frampton v. S.C. Dep't of Transp.*, 406 S.C. 377, 385, 752 S.E.2d 269, 274 (Ct. App. 2013) ("Orders affecting the mode of trial affect a substantial right as defined in section 14-3-330(2) of the South Carolina Code (1976), 'and must, therefore, be appealed immediately.'" (quoting *Lester v. Dawson*, 327 S.C. 263, 266, 491 S.E.2d 240, 241 (1997))); *id.* at 386, 752 S.E.2d at 274 (holding the appellant did not preserve its argument that the trial court erred by denying its request for a nonjury trial for appellate review because it "did not immediately appeal the trial court's order affecting the mode of trial, which is a substantial right"). Upon answering Grapevine's second amended complaint, Riverwalk moved to strike Grapevine's jury trial demand, arguing the parties agreed to waive their right to a jury trial by the express terms in the Lease. The trial court denied the motion. Appellants renewed their motion to strike the jury trial demand during a pretrial hearing, but they did not immediately appeal the trial court's order denying their motion to strike. Thus, we find this issue is not preserved and we affirm the trial court's denial of Appellants' motion to strike the jury trial demand.

## II. Breach of Contract Claims as to the Option and Use of Common Areas[2]

Appellants argue the trial court erred by submitting the issues of breach of contract as to the Option and use of the common areas to the jury. As to the Option, Appellants contend the trial court erred by concluding Grapevine exercised the Option when it wrote its letter because Grapevine failed to tender the PSA and a $25,000 deposit as the Option required. As to the common areas, Appellants argue whether the Lease allowed Grapevine to place its tables and chairs on the community sidewalk was a question of law and the trial court thus erred by submitting this question to the jury and denying its motion for JNOV.

We hold Appellants failed to preserve these arguments because they did not renew their motion for directed verdict as to these causes of action at the close of all the evidence. *See Wright v. Craft*, 372 S.C. 1, 19-20, 640 S.E.2d 486, 496 (Ct. App. 2006) ("When a defendant moves for a directed verdict under Rule 50, SCRCP[,] at the close of the plaintiff's case, he must renew that motion at the close of all evidence. Otherwise, this court is precluded from reviewing the denial of the motion on appeal." (citations omitted)); *id.* at 20, 640 S.E.2d at 496 ("[A] motion

---

[2] We address Appellants' Issues II and IV together under this heading.

for JNOV under Rule 50(b), SCRCP[,] is a renewal of a directed verdict motion. When a party fails to renew a motion for a directed verdict at the close of all evidence, he waives his right to move for JNOV." (citation omitted)); *see also Hendrix v. E. Distrib., Inc.*, 320 S.C. 218-19, 464 S.E.2d 112, 113 (1995) (affirming in result only as to this court's finding that the appellant's failure to renew its motions for directed verdict at the close of all the evidence precluded appellate review of the directed verdict issues and vacating the opinion to the extent it addressed the merits of these issues). Appellants renewed their directed verdict motion only as to Grapevine's claims for civil conspiracy and negligent misrepresentation. Thus, we affirm the trial court's submission of the breach of contract claims to the jury.

## III.  Specific Performance

Appellants argue the trial court erred by granting Grapevine's claim for specific performance. They assert that a court of equity must find "there is clear evidence of a valid agreement" to compel specific performance. Appellants contend the Option cannot be specifically enforced because it was a mere right held in anticipation of a potential future purchase contract. They further aver Grapevine's execution of the PSA as provided in Exhibit G was a necessary condition to its exercise of the Option. Appellants argue the Option could not be fulfilled without the execution of a PSA, including a contemporaneous escrow deposit. Appellants assert that because Grapevine never tendered the PSA, it had no purchase contract for the court to specifically enforce. We agree.

> [T]o compel specific performance, a court of equity must find: (1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract.

*Ingram*, 340 S.C. at 106, 531 S.E.2d at 291.

> Option contracts generally have three main characteristics: (1) they are unilateral contracts where the optionor, for a valuable consideration, grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; (2) they are continuing offers to

> sell, irrevocable during the option period; and (3) the
> transition of an option into a contract of purchase and
> sale *can only be effected by an unqualified and
> unconditional acceptance of the offer in accordance with
> the terms and within the time specified in the option
> contract.*

*Id.* at 108, 531 S.E.2d at 292 (emphasis added). "It is well settled in South Carolina that option contracts are strictly construed in favor of the optionor and against the optionee." *Alexander's Land Co.*, 390 S.C. at 595, 703 S.E.2d at 214 (quoting *Ingram*, 340 S.C. at 108, 531 S.E.2d at 292). "[I]f the option requires performance in a certain manner, time is of the essence and exact compliance with the terms of the option are required." *Ingram*, 340 S.C. at 108, 531 S.E.2d at 292. "An expired and unexercised option contract is essentially an unaccepted offer." *Alexander's Land Co.*, 390 S.C. at 595, 703 S.E.2d at 214.

"Generally, actual payment is essential to the acceptance of an option contract when payment is made a condition precedent to the exercise of the option." *Ingram*, 340 S.C. at 108, 531 S.E.2d at 292. However,

> [i]n cases where the option contract does not explicitly
> require the payment of the purchase price as a condition
> precedent to the exercise of an option, 'courts have
> generally been inclined to construe such agreements as
> calling simply for a promise by the optionee to pay the
> price, rather than for actual payment thereof.'

*Id.* at 109, 531 S.E.2d at 292-93 (quoting 71 A.L.R.3d 1201, 1219 (1976)).

"South Carolina cases dealing with option contracts have been decided on a factual basis, recognizing the difference between a free standing option contract to purchase real estate and an option provision embedded in a lease." *Id.* at 111, 531 S.E.2d at 294. "To determine whether actual payment is required to exercise an option, it is important to look at both the specific language used in the option contract and also the context in which it was made." *Id.* at 109, 531 S.E.2d at 293.

> In the absence of a provision in the option agreement
> specifying the time or method of payment, the question
> of whether the purchase price or a part thereof must be
> paid or tendered in order to exercise the option has

generally been found to depend on whether the terms of the option require the payment of a fixed sum at the expiration of a certain period, *such as the term of a lease, in which case payment is required in order to exercise the option.*

*Id.* (quoting 77 Am. Jur. 2d *Vendor and Purchaser* § 53 (1997)).

An option contract is interpreted according to its actual terms and the context in which the contract was made. In general, if the contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense. If the option contract specifically makes the tender of the purchase price a condition precedent to the option's exercise, then the plain language of the contract controls and actual tender is required.

*Id.* at 110-11, 531 S.E.2d at 293 (citations omitted); *see also* 92 C.J.S. *Vendor and Purchaser* § 172 (2025) ("An option must be accepted according to its terms; thus, if the option prescribes certain conditions for its acceptance, those conditions must be performed while the option is still outstanding, unless they are waived or the option[o]r makes compliance impossible." (footnotes omitted)); 92 C.J.S. *Vendor and Purchaser* § 173 (2025) ("Payment or tender is not essential to acceptance unless the option instrument makes it a condition precedent to, or a part of, or necessary to the acceptance or the exercise of the option." (footnotes omitted)).

"A condition precedent is an act which must occur before performance by the other party is due." *Alexander's Land Co.*, 390 S.C. at 596, 703 S.E.2d at 214 (quoting *Wood v. Roy Lapidus, Inc.*, 413 N.E.2d 345, 347 n.5 (Mass. App. Ct. 1980)). "If a contract contains a condition precedent, that condition must either occur or it must be excused before a party's duty to perform arises." *Id.* (quoting *McGill v. Moore*, 381 S.C. 179, 187, 672 S.E.2d 571, 575 (2009)). "When an option is subject to a condition precedent, in addition to manifesting acceptance within the stated time, the optionee must satisfy the conditions, and the contract will not be specifically enforced until any such conditions are met." *Id.* at 595, 703 S.E.2d at 214; *see also id.* at 596, 703 S.E.2d at 214 ("[Because the b]uyer never satisfied the condition precedent, and there is no evidence that this failure was ever excused by the [s]eller, the [b]uyer was not entitled to exercise the option, and no duty arose on

the part of the [s]eller to convey the real property."); *id.* at 595, 703 S.E.2d at 214 ("The [b]uyer's failure to meet the condition precedent . . . clearly did not constitute proper and unequivocal compliance with the explicit terms of the option prior to the time the option expired on its face.").

The option at issue in *Ingram* was also contained in a lease and stated: "Lessee shall have the right *to purchase the premises at any time during the term* hereof, as is described in this paragraph . . . ." 340 S.C. at 103, 531 S.E.2d at 289 (emphasis added). The tenant provided written notice to the landlord that he intended to exercise his option, stating, "This will serve to advise you that I am hereby exercising my option and right to purchase the above-referenced premises pursuant to the option contained in the above described lease Agreement . . . ." *Id.* at 103, 531 S.E.2d at 290. However, the tenant never tendered any portion of the purchase price prior to the end of the lease term. *Id.* at 104, 531 S.E.2d at 290. Our supreme court held written notice of the tenant's intent to exercise the option, without the actual tender of the purchase price, was insufficient to fulfill the terms of the option contract. *Id.* at 108-11, 531 S.E.2d at 292-94.

In *Cotter v. James L. Tapp Co.*, 267 S.C. 647, 230 S.E.2d 715 (1976), our supreme court held a tenant's letter to its landlord was not a valid exercise of an option. In that case, the tenant's lease included a renewal option, which provided, "([A]fter five years) this option may be extended for another three (3) years upon the payment by tenant of thirty cents ($0.30) per sq. ft. per year for said expansion area, payable monthly as an option cost." *Id.* at 652, 267 S.E.2d at 717. Our supreme court held the renewal option provided that the option may be extended for an additional three years upon payment of a specified option cost and the fact that the tenant gave notice that it wished to exercise the option prior to the end of the lease term was irrelevant because the option contained no notice requirements. *Id.* at 653-54, 267 S.E.2d at 718. The court further held the landlord was "entitled to exact compliance with the terms of the option and there [wa]s simply [n]o way to equate a requirement to pay money with the giving of written notice." *Id.*

We find that under the terms of the Option, Grapevine's notice of its intent to exercise the Option was alone insufficient to exercise the Option. *See Ingram*, 340 S.C. at 105, 531 S.E.2d at 290 (holding written notice of the tenant's intent to exercise the option, without the actual tender of the purchase price, was insufficient to fulfill the terms of the option contract). By its terms, the Option, which references Exhibit G to the Lease, required Grapevine to, at a minimum, pay or tender a deposit of $25,000 as a condition precedent to exercise the Option. *Id.* at 108, 531 S.E.2d at 292 ("[I]f the option requires performance in a certain

manner, time is of the essence and exact compliance with the terms of the option are required.").  Thus, we hold the trial court erred by concluding the Option only required 120 days advance written notice and did not require payment or tender of the purchase price to bind the parties to the purchase.  Even though Wilson's and Melanie's testimonies indicated Grapevine was ready, willing, and able to pay the purchase price on February 2, 2018, and at any time thereafter, nothing prevented Grapevine from paying or tendering the deposit to an escrow agent of its choosing.  Further, given the parties' failure to agree regarding the essential terms of the PSA, including the creation of the horizonal property regime, we find there was no meeting of the minds and therefore no valid contract to enforce.  *See id.* at 106, 531 S.E.2d at 291 ("[T]o compel specific performance, a court of equity must find . . . there is clear evidence of a valid agreement . . . .").  For these reasons, we reverse the trial court's grant of specific performance.

## IV.  Negligent Misrepresentation

Appellants argue the trial court erred by denying its motion for JNOV on the negligent misrepresentation claim because no evidence supported the jury's verdict.

Although Appellants renewed their motion for directed verdict on the negligent misrepresentation claim at the close of all the evidence, the only basis they provided for the motion was that there was no showing of detrimental reliance. Thus, Appellants failed to preserve any argument on this issue except the argument that no evidence showed Grapevine relied on the representation.  *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 332, 732 S.E.2d 166, 171 (2012) (finding an argument was not properly before the court when the appellant urged a different ground on appeal than the ground it raised in its directed verdict motion); *see also Roland v. Palmetto Hills*, 308 S.C. 283, 286, 417 S.E.2d 626, 628 (Ct. App. 1992) ("A motion for a [JNOV] is a renewal of the directed verdict motion and cannot raise grounds beyond those raised in the directed verdict.").

Further, we hold Appellants' JNOV motion was untimely and therefore this issue is not preserved for appellate review.  The trial court gave the parties fourteen days after the jury issued its verdict to file posttrial motions and Appellants filed the motion on the fourteenth day.  However, under the South Carolina Rules of Civil Procedure, the trial court does not have discretion to extend the time for making such motions beyond the time provided for in the rule.  Rather, under Rule 6(b), the time for making a JNOV motion may not be extended beyond ten days.  *See* Rule 6(b), SCRCP ("The time for taking any action under rules 50(b), 52(b), 59, and 60(b) may not be extended except to the extent and under the conditions stated

in them."); Rule 50(b), SCRCP ("Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.  A party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . ."); Rule 50(e), SCRCP (providing the time for taking an action under Rule 50(b) and stating a "motion for [JNOV] shall be made promptly after the jury is discharged, or in the discretion of the court *not later than 10 days thereafter*" (emphasis added)).  Thus, the trial court had no discretion to extend this time to fourteen days, and we hold this issue is not preserved for appellate review because Appellants failed to file a timely motion for JNOV.

## V.  Attorney's Fees

Appellants argue the trial court erred by awarding Grapevine attorney's fees and costs of $404,934.75 to be taxed against Riverwalk.  Appellants contend that even after the trial court reduced the fees by thirty percent, the fees were still unreasonable under the *Blumberg* factors because most were incurred in pursuing unsuccessful causes of action against four entities against whom it had no right to attorney's fees and costs.

We hold Appellants' arguments that Grapevine was estopped from enforcing the attorney's fees provision in the Lease, that the Lease prohibited Grapevine from obtaining attorney's fees incurred in pursuing extra-contractual damages, and that the redacted invoices were insufficient to provide a reasonable basis for the trial court to award attorney's fees are not preserved for review.[3]  *See, e.g.*, *In re Walter M.*, 386 S.C. 387, 392, 688 S.E.2d 133, 136 (Ct. App. 2009) ("Generally, an issue must be both raised to and ruled upon by the trial court in order to be preserved for appellate review.").  Although the Appellants raised these arguments to the trial court, the trial court did not rule on these arguments in its order granting attorney's fees and Appellants' motion to reconsider the attorney's fee award did not request a

---

[3] Although we have found the issue is not preserved, we note we are troubled by the redacted billing statements.  The fee affidavit indicates that unredacted bills were available for in camera review by the court; however, the trial court's order does not specify that it reviewed the unredacted invoices in making the award.  Further, the trial court stated in its order that the billing statements were unclear as to which tasks were "in furtherance of the breach of lease claims—which [are] the only claim[s] upon which attorney['s] fees and costs may be awarded."

ruling on any of these arguments. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *must* file [a Rule 59(e)] motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review."); *see also Cowburn v. Leventis*, 366 S.C. 20, 41, 619 S.E.2d 437, 449 (Ct. App. 2005) ("When a trial court makes a general ruling on an issue, but does not address the specific argument raised by a party, that party must make a Rule 59(e) motion asking the trial court to rule on the issue in order to preserve it for appeal.").

Nevertheless, because we reverse the trial court's grant of specific performance—one of the two claims for which Grapevine could seek attorney's fees under the Lease—we reverse the trial court's award of attorney's fees and remand the issue for the trial court to reexamine the factors. *See Blumberg*, 310 S.C. at 494, 427 S.E.2d at 660 (providing that in determining an award of attorney's fees, courts should consider (1) "nature, extent, and difficulty of the legal services rendered"; (2) "time and labor devoted to the case"; (3) "professional standing of counsel"; (4) "contingency of compensation"; (5) "fee customarily charged in the locality for similar services"; and (6) "beneficial results obtained").

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Riverwalk's motions to strike the jury trial demand and for directed verdict on the breach of contract claims as to the Option and use of the common areas; we reverse the grant of specific performance; and we reverse and remand the award of attorney's fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**THOMAS, HEWITT, and VINSON, JJ., concur.**